FILED
2009 Nov-30  PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **RONDA S. THOMAS BURNS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  1:08-CV-1176-VEH** |
| | ) |
| **SUPERVALU HOLDINGS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

_____

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Ronda S. Thomas Burns ("Burns") initiated this Title VII job discrimination lawsuit on July 2, 2009, relating to her employment with Defendant SUPERVALU Holdings, Inc. ("SUPERVALU").[1] (Doc. 1).  Stone filed an amended complaint (Doc. 4) on October 30, 2008, and a second amended pleading (Doc. 14) on February 27, 2009.

On April 23, 2009, this court dismissed count two of Burn's second amended complaint for retaliation.  (Doc. 19).  Accordingly, the only claim that remains in this

_____

[1]  Burns initially named the defendant as Super Valu, Inc., but this improper party identification was later corrected in her second amended complaint (Doc. 14) filed on February 27, 2009.

lawsuit is one for sex discrimination relating to SUPERVALU's alleged differing disciplinary treatment culminating in Burns's discharge on the basis of gender. (Doc. 14 at 1).

This case is before the court on SUPERVALU's Motion for Summary Judgment (Doc. 23) filed on August 31, 2009. SUPERVALU's brief and evidentiary materials in support of summary judgment were also filed on August 31, 2009. (Doc. 25).

Because Burns is proceeding *pro se*, on October 27, 2009, the court provided her with special notice regarding her rights and obligations in opposing Defendant's motion. (Doc. 26). Burns filed her responsive materials on November 19, 2009. (Doc. 28).

SUPERVALU filed its reply (Doc. 30) on November 30, 2009. Accordingly, SUPERVALU's Motion for Summary Judgment is now under submission. The court has carefully reviewed the record on summary judgment and concludes that SUPERVALU's Motion for Summary Judgment is due to be granted for the reasons explained below.

## II.    STATEMENT OF FACTS[2]

### A.    The Parties

SUPERVALU operates a warehouse and distribution center in Anniston.  AF

No. 1.[3]  Burns is a female who formerly worked for SUPERVALU from May 22,

_____

[2]    Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Therefore, these are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[3]  The designation "AF" stands for admitted fact and indicates a fact offered by SUPERVALU that Burns has admitted in her written submissions on summary judgment, her deposition, or by virtue of any other evidence offered in support of her case.  Whenever Burns has adequately disputed a fact offered by SUPERVALU, the court has accepted her version.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of SUPERVALU's initial statement of facts as set forth in Doc. 24.

In her brief, Burn's has not directly responded to SUPERVALU's statement of facts as required under Appendix II of the court's Uniform Initial Order.  (Doc. 9).  Moreover, the court expressly reminded the parties that "all  briefs regarding summary judgment <u>must</u> comply with Appendix II to this Court's Uniform Initial Order, which was entered in this action on December 1, 2008."  (Doc. 26 at 2).  As a result of Burn's omission and by operation of Appendix II, SUPERVALU's facts set forth in (Doc. 24) are deemed admitted for the purposes of summary judgment.

At the same time, this court is aware that any "specific facts" pled in a *pro se* plaintiff's <u>sworn</u> complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).  Burn's claims were initially brought pursuant to a sworn complaint. (Doc. 1).  Also, she has attached two sworn affidavits from non-party witnesses relating to her claims as part of her

2006, until March 29, 2007, when she was fired for excessive absenteeism.  AF No. 2.

Burns, a member of the collective bargaining unit, worked as an order selector with SUPERVALU until January 2007, when she bid for and received a position in receiving.  AF No. 3.  Over the course of Burns's employment, she was supervised by Jennifer Goins ("Goins"), Tony Key ("Key"), Sherman Houston ("Houston"), and Marvin Reese ("Reese").  AF No. 4.  Fred Brooks ("Brooks") was the Human Resources Director during the relevant time period.  AF No. 5.

### B.   SUPERVALU's Attendance Policy

When SUPERVALU implemented its new attendance policy on June 22, 2006, Burns received a copy.  AF No. 7.  Burns understood that, under the attendance policy, she would receive:

    a.    one point for each day absent, except that consecutive days absent
        would result in only one point;

---

evidence in opposition to summary judgment.  (*See, e.g.*, Doc. 29 at Ex. 7 at 5-6).  Accordingly, in formulating the following statement of facts, the court has considered any specific <u>admissible</u> facts included in these sworn documents that are material to its decision on summary judgment.

Because of the voluminous number of facts asserted by the parties on summary judgment, the court has endeavored to limit its recitation to those facts it finds to be critical to its decision.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

     b.     one-half point for the first six occurrences of tardiness less than one hour from the beginning of the shift, and one point for each occurrence of tardiness thereafter;

     c.     one-half point for the first six occurrences of leaving early less than one hour before the end of the shift, and one point for each occurrence of leaving early thereafter;

     d.     one point for each occurrence of tardiness more than two hours after the beginning of the shift; and

     e.     one point for each occurrence of leaving early more than one hour before the end of the shift.

AF No. 8.

Burns also was aware that the attendance policy included progressive discipline depending on the number of points accumulated in a rolling twelve-month period.

AF No. 9.

Burns further knew that, under the attendance policy, she would:

     a.     receive a verbal warning upon accumulating four points;

     b.     receive a written warning upon accumulating six points;

     c.     receive a final warning upon accumulating eight points; and

     d.     be subject to termination upon accumulating ten points.

AF No. 10.

Under the attendance policy, employees did not receive points for excused absences.  AF No. 11.  While absences covered by FMLA or due to hospitalization,

5

work-related injury or approved medical disability were considered excused absences under the policy, simply calling in sick was not a reason for an excused absence and still resulted in the employee receiving a point.  AF No. 12.  Similarly, absences due to a required court appearance were excused under the policy, but absences to attend counseling sessions, even if court-ordered, are not excused unless the court order sets the time for the session.  AF No. 13.

Under SUPERVALU's vacation policy, as of November 22, 2006 (after six months of employment), Burns had available for her use five days of vacation, which she never used.  AF No. 14.  Burns also had scheduled days off, which she could have used for her personal appointments.  AF No. 15.  Pursuant to the union contract, employees with at least one year of seniority are not charged a point for the first two sick days taken in each calendar year.  AF No. 16.

### C.    Burns's  Discipline and Discharge Under the Attendance Policy

On August 2, 2006, Burns signed and received a verbal warning dated July 27, 2006, because she had accumulated four points by:

a.     leaving more than one hour early on July 9 (one point; her absence on July 10 was a consecutive day so no additional point was assessed);

b.     leaving more than one hour early on July 11 (one point);

c.     being absent on July 24 (one point); and

6

> d.       leaving more than one hour early on July 26.

AF No. 17.  Burns does not dispute the points she received for July 11, 2006, and July 24, 2006.  AF No. 18.  Further, when she received this warning, Burns did not claim that the points for July 9, 2006, or July 26, 2006, should have been excused.  AF No. 19.

On August 10, 2006, Burns signed and received a written warning dated August 8, 2006, because she had accumulated an additional two points (for a total of six points) by:

> a.       leaving more than an hour early on July 27 (one point); and
>
> b.       being absent on August 8 (one point).

AF No. 20.  Burns does not dispute the two points issued against her August 8, 2006 written warning for July 27, 2006, and August 8, 2006.  AF No. 21.

On November 7, 2006, Burns signed and received a final warning dated November 2, 2006, because she had accumulated an additional two points (for a total of eight points) by:

> a.       being absent August 15, 16 and 17 (one point due to consecutive days); and
>
> b.       being absent October 20 (one point).

AF No. 22.  Burns does not dispute the point she received for October 20, 2006.  AF

No. 23.  Further, when she received this warning, Burns did not claim that the point for August 15-17, 2006, should have been excused.  AF No. 24.

On January 18, 2007, Burns was suspended because she had accumulated two additional points (for a total of ten, subjecting her to termination under the policy) by:

    a.      being absent October 31 and November 1 (one point due to consecutive days); and

    b.      being absent January 12 and 13 (one point due to consecutive days).

AF No. 25.  Burns does not dispute the point she received for January 12 and 13.  AF No. 26.  Further, at the time she was suspended, Burns did not claim that the point for October 31-November 1, 2006, should have been excused.  AF No. 27.

After she was suspended, Burns told Brooks that she had requested a leave of absence for August 15-17, 2006, to attend counseling, and brought in documentation of her counseling sessions, so he removed the point for that three-day consecutive absence, dropping her point total to nine points.  AF No. 28.  Although he was not required to do so under the attendance policy, Brooks excused the August 15-17, 2006 absences because he understood that Burns had, prior to those absences, requested a leave of absence but never received any response from SUPERVALU.  AF No. 29.  Brooks then returned Burns to work and cautioned her that any additional attendance violation would result in her separation from SUPERVALU.  AF No. 30.

Burns was scheduled to work, but instead was absent for the entire week of March 18-24, 2007; she specifically called in sick on March 18, 19, 21, 22 and 23. AF No. 31.  Upon her return to work on March 25, 2007, Burns told Brooks she had been absent because she "was sick, stressed out, and depressed" because she was afraid of being sent to jail because she had been "scammed" by someone from Canada who sent her a "bogus" check for over $4,000.00 that she cashed.  AF No. 32.

Burns did not see a physician or provide any documentation for these absences. AF No. 33.  Though she testified during her deposition that she talked to her doctor during this week, she admits that she did not provide that information to Brooks.  AF No. 34.

Burns did not provide any information that would have excused her week-long absence under the attendance policy; accordingly, Brooks decided to terminate her employment on March 29, 2007.  AF No. 35.  The ten attendance points that led to Burns's dismissal under the policy were:

a.   July 9, 2006 – leaving early and consecutive day absence for July 10, 2006 (one point);

b.   July 11, 2006 – leaving early (one point);

c.   July 24, 2006 – absent (one point);

d.   July 26, 2006 – leaving early (one point);

9

e.      July 27, 2006 – leaving early (one point);

f.      August 8-9, 2006 – consecutive days absent (one point);

g.      October 20, 2006 – absent (one point);

h.      October 31-November 1, 2006 – consecutive days absent (one point);

i.      January 12-13, 2007 – consecutive days absent (one point); and

j.      March 18-24, 2007 – consecutive days absent (one point).

AF No. 36.

### D.      Burns's Objections About Certain Attendance Points

Burns only disputes three of the ten points that led to her termination:  the ones she received for July 9, 2006, July 26, 2006, and October 31 – November 1, 2007. AF No. 37.  Burns maintains that she should not have been charged a point for leaving early on July 9, 2006, because (1) there was a policy in the union contract that stated that, because she began her day in the freezer area of the warehouse, called "Nordic," before the general warehouse shift began, her shift was supposed to end two hours before the general warehouse shift; (2) she left sick; and (3) she left for a counseling appointment.  AF No. 38.

Burns also asserts that she should not have received a point for leaving early on July 26, 2006, because she had a counseling appointment and due to the alleged

"two hour early for Nordic" rule.  AF No. 39.  Burns further alleges that she should not have received a point for being absent October 31 – November 1, 2006, because she asked for and received a leave of absence from supervisor Key.  AF No. 40.

The alleged policy that purportedly permits Nordic employees to leave early is not contained in the union contract and, indeed, does not exist.  AF No. 41.  Burns admits that, under the attendance policy, being out sick is not an excused absence unless it is covered by FMLA or due to hospitalization, work-related injury or approved medical disability.  AF No. 42.  Also, absences to attend counseling sessions, which could have been scheduled during non-work time, were not excused absences under the policy.  AF No. 43.

Burns never told Brooks that she had allegedly requested a leave of absence from Key.  AF No. 44.  Regardless, Key did not have the authority to authorize a leave of absence.  AF No. 45.

### E.    Leniency Afforded Burns Under the Attendance Policy

Burns's employment was terminated for eighteen occurrences of being absent or leaving early that earned her ten points under the attendance policy.  AF No. 46.  In addition to those eighteen occurrences, Burns was absent or left early at least an additional seven times without being charged any points under the attendance policy.  AF No. 47.

11

More specifically, on June 7, 2006, Burns was a no call/no show but her absence was excused and she was not charged a point.  AF No. 48.  On June 21, 2006, Burns left early but her absence was excused and she was not charged a point.   AF No. 49.

Also, on August 15, 16 and 17, 2006, Burns was absent for personal reasons and attended counseling sessions on those days.  AF No. 50.  Though these August absences were not excused absences under the policy, Brooks excused them anyway because Burns claimed to have requested a leave of absence prior to being absent those days.  AF No. 51.

Additionally, on September 18, 2006, Burns was absent to attend a counseling session and, though it was not an excused absence under the attendance policy, Brooks excused the absence and did not charge a point for that day.  AF No. 52. Further, on December 13, 2006, Burns was absent for a court date and was not charged a point as, pursuant to the attendance policy, this was an excused absence. AF No. 53.

In addition to the above dates recorded in Burns's attendance records, Burns also left early on occasions, especially Saturdays, that her supervisor, Reese, did not record and which do not show up in her attendance records, and for which she was not charged any points.  AF No. 54.  Also, Burns apparently attended counseling

sessions on June 8, 2006, June 13, 2006, June 29, 2006, July 6, 2006, September 8, 2006, September 22, 2006, September 29, 2006, October 3, 2006, October 17, 2006, October 26, 2006, and November 13, 2006, for which SUPERVALU neither recorded an absence nor charged her a point.  AF No. 55.  Her counseling sessions on these dates were either times where she scheduled them during non-work times or times where she left work but was not charged for leaving early.  AF No. 56.

### F.    Burns's Alleged Factual Bases for Her Discrimination Claim

The reasons that Burns gave during her deposition for believing she was discriminated against were that male employees were allegedly allowed to incur absences without being disciplined and that supervisors Key and Houston made gender-based comments about her performance and gave her less favorable work assignments.  AF No. 57.

More specifically, Burns testified that the following male SUPERVALU employees were allowed to accumulate more than twenty or thirty attendance points without being disciplined:  Brandon Angles, Michael Vinson, Corie Ramsey, Lamar Williams, Derrick Ward, Josh Garner, Jason Hudgins, and Christopher Haynes.  AF No. 58. Burns has no first-hand knowledge about these male employees' attendance records and disciplinary histories and the source of this information is second-hand from the male employees themselves and from workplace gossip.  AF No. 59.

Brandon Angles never accumulated ten points under the attendance policy. AF No. 60. Michael Vinson was discharged on September 27, 2007, after he was late for work on September 26, 2007, at which time he accrued ten points under the policy. AF No. 61. Vinson also got into a fight at work that same day and was fired for this reason as well. AF No. 62.

Corie Ramsey never accumulated ten points under the attendance policy. AF No. 63. SUPERVALU's records do not reflect an employee named Lamar Williams. AF No. 64.

SUPERVALU employed a Lakeith Williams from July 23, 2007, until September 26, 2007, when he voluntarily resigned. AF No. 65. Derrick Ward was dismissed on July 17, 2007, when he accumulated ten points under the policy. AF No. 66.

Josh Garner was discharged on May 15, 2007, when he accumulated ten points under the policy. AF No. 67. Jason Hudgins was fired on July 27, 2007, when he accumulated ten points under the policy. AF No. 68. Christopher Haynes was let go on July 17, 2007 when he accumulated ten points under the policy. AF No. 69.

Burns further testified that supervisors Sherman Houston and Tony Key said to male employees in her presence, "I can't believe y'all are going to let a woman outdo y'all in picking," and "you're going to let a woman outwork you." AF No. 70.

Burns also stated that Key and Houston gave her less desirable work assignments in the freezer. AF No. 72.

Human Resources Manager Brooks is not alleged ever to have made any comments about women. AF No. 71.    Brooks made the decision to terminate Burns's employment with SUPERVALU, not Houston or Key.  AF No. 73.

Burns did not observe anything to indicate that other female employees at SUPERVALU were discriminated against.  AF No. 74.  In 2006 and 2007, the years during which Burns worked at SUPERVALU, the company discharged twenty-one male employees for excessive absenteeism under the attendance policy and only two female employees, including Burns.  AF No. 75.

## III.   STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick*, 2 F.3d at 1115. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific

facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases in which there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden

16

of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must either prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination or present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision.  *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## IV.   ANALYSIS

SUPERVALU seeks summary judgment on Burns's gender discrimination claim on the grounds that (1) she cannot establish a *prima facie* case of discriminatory disciplinary treatment; and alternatively that (2) she cannot show that SUPERVALU's asserted legitimate reason for ending her employment due to her repeated violations of its attendance policy is pretextual. (Doc. 24 at 17, 30).  The court agrees.

**A.    Burns cannot establish a *prima facie* case in that she has not identified any suitable comparators.**

In a circumstantial evidence case alleging discrimination,[4] the four *prima facie* elements that Burns must establish are: (1) she belongs to a protected category; (2) she suffered an adverse employment action; (3) she was treated less favorably than other similarly situated employees outside of her protected class; and (4) she was qualified for the position. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (outlining *prima facie* elements for race discrimination claim). Therefore, the initial inquiry for the court is whether Burns has adduced sufficient evidence of a *prima facie* case of discrimination.

For the purposes of summary judgment, Burns has shown and SUPERVALU concedes that she is a member of a protected class, *i.e.*, that she is female, that she suffered an adverse employment action, *i.e.*, that she was fired, and that she was qualified for the position that she held—a position in receiving with SUPERVALU. However, Burns's proof is lacking as to *prima facie* element number 3—evidence of similarly situated male employees outside of her protected category, who were treated more favorably than she. Although Burns asserts that such similarly situated male employees exist, this allegation is not supported by substantial evidence as the above

---

[4] Burns offers no evidence that would support a "direct evidence" claim of gender discrimination.

Case 1:08-cv-01176-VEH   Document 31   Filed 11/30/09   Page 19 of 26


admitted facts supported by specific proof demonstrate.

The standard to be applied in evaluating whether employees are similarly situated is now a familiar one:

> To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects. . . . In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."

*Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield*, 115 F.3d at 1562).

Additionally, the Eleventh Circuit has held that "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted); *see also Manicci v. Brown*, 171 F.3d 1364, 1668-69 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's conduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."). Where, as here,[5] there is an absence of any other evidence suggesting that a decision was

---

[5] The court acknowledges that Burns testified that she has heard supervisors Houston and Key make gender-related comments in the workplace. However, there is no evidence linking Houston's or Key's arguably invidious remarks to the decision to fire Burns under the attendance policy; instead, Burns admits that this decision was made entirely by Brooks. Therefore, such stray statements by non-decisionmakers

discriminatory, the existence of a similarly situated employee is critical to a plaintiff's ability to prevail on summary judgment.  *See Holifield*, 115 F.3d at 1562 ("*If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.*") (emphasis in original) (citation omitted).

These principles have particular application in cases involving an employee who was discharged for the alleged violation of a work rule.  A plaintiff fired for violating an employer's rules must show that the employer retained an employee outside the protected class whom the employer believed engaged in nearly identical rule violations.  *Nix v. WLCY Radio*, 738 F.2d 1181, 1185-87 (11th Cir. 1984); *see also Jones v. Gerwens*, 874 F.2d 1534, 1540-42 (11th Cir. 1989), *modified by Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998) (holding that, in cases involving alleged racial bias in the application of discipline for violation of work rules, plaintiff must show that the disciplinary measures enforced against him were more severe than those enforced against the other persons outside his protected class who were believed to have engaged in similar misconduct),

---

are insufficient to satisfy the third *prima facie* element.  *See, e.g., Evans v. McClain of Georgia, Inc*., 131 F.3d 957 (11th Cir. 1997) ("As Hall was not a decisionmaker with respect to either of these employment decisions, his discriminatory comment cannot satisfy Appellant's burden in this regard.") (citation omitted).

*modified in non-relevant part on denial of reh'g by Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323-24 (11th Cir. 1998).

Here, while Burns has speculated about a host of male employees who she believes received more lenient treatment under the attendance policy than she, she has not pointed to any concrete evidence to support these suspicions.  In particular, she has not shown any examples of a male employee with an attendance record comparable to hers, and who, unlike her, was allowed to remain employed with SUPERVALU.

Moreover, SUPERVALU has affirmatively demonstrated the invalidity of her mistaken impressions about the list of male employees that she provided.  Therefore, Burns has failed to show that SUPERVALU treated a similarly situated male outside of her protected category more favorably than she, and accordingly, she cannot establish a *prima facie* case of discriminatory discipline culminating in discharge on the basis of gender.

**B.      Alternatively, Burns cannot demonstrate pretext in SUPERVALU's legitimate nondiscriminatory reasons for its treatment of her.**

Even if Burns has established a *prima facie* case of gender discrimination, then summary judgment is alternatively appropriate because she cannot demonstrate pretext in SUPERVALU's legitimate nondiscriminatory reasons for its treatment of

21

her.   Brooks's decision to discharge Burns was based upon his adherence to the attendance policy and nothing in the record suggests that he acted "on anything other than his good faith application of [this] policy." (Doc. 24 at 24).  For example, while Burns now disputes some of the attendance points that she was assessed under the policy, she has conceded that she did not challenge any of them <u>at the time she received them</u> and there is no evidence in the record that Brooks had some independent knowledge that points were dubiously attributed to Burns under the policy <u>at the time of his decision</u>.

If an employer "articulates one or more [legitimate, non-discriminatory] reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'"  *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997) (citations omitted)).   "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."  *Chapman*, 229 F.3d at 1024-25 (citing *Combs*, 106 F.3d at 1529).

A plaintiff may not recast an employer's proffered non-discriminatory reasons or substitute her business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet the reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.  *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43)).  "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatory]."  *Alexander*, 207 F.3d at 1341 (11th Cir. 2000); *see also Combs*, 106 F.3d at 1541-43.

The determinative issue for the court on the issue of pretext is whether Burns has adduced sufficient evidence from which a reasonable jury could conclude that SUPERVALU's articulated rationale for assessing points against her and ultimately firing her pursuant to its attendance policy is a pretext–*i.e.*, a lie–to cover up intentional unlawful gender discrimination.  The court concludes that Burns has not presented substantial evidence of pretext.[6]

_____

[6] For example, Burns has not offered any evidence of inappropriate remarks or comments made by the undisputed decisionmaker, Brooks, which might imply that he harbors a sexually discriminatory animus toward women.  Also, while Burns has attached the affidavits of Larmar Williams and Christopher Bryan Washington in an effort to bolster her claims, the affiants are non-specific about what and who they

In addressing the issue of pretext, the Supreme Court has explained:

> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
>
> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original) (citations omitted). Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse employment decision, judgment as a matter of law in favor of the employer would still be appropriate if the record conclusively demonstrates some other, non-discriminatory basis for the decision, or reveals only a weak issue of fact coupled with plentiful evidence that no illegal

---

witnessed, when they witnessed it, where they witnessed it, and consequently, this testimony is unhelpful to Burns in effectively opposing summary judgment. (Doc. 28 at 14 ("THAT AFFIANT witnessed the discriminatory acts imposed upon Plaintiff by Representatives of Super Value, Inc."); *id.* at 16 (same)). Finally, any attempt by Burns to use comparator information to establish pretext fails for the same reasons that such purported evidence is insufficient to establish a *prima facie* case of gender discrimination as discussed above.

24

discrimination took place.

Here, in studying Burns's opposition, the court fails to see where she has offered any affirmative proof which brings into question SUPERVALU's explanation for its treatment of her under its attendance policy.  Indeed, a large portion of Burns's brief is devoted to her retaliation claim, which count has already been dismissed from her case, as well as never before pled sexual harassment, ADEA, ADA, EPA, and FLSA claims.  (*See, e.g.*, Doc. 28 at 4-13 (referencing retaliation and sexual harassment as well as damages under the ADEA, the ADA, the EPA and the FLSA)).  Therefore, Burns's opposition to summary judgment fails on a lack of substantive proof.

Alternatively, in the complete absence of Burns's even attempting to address evidence of pretext in the context of her gender discrimination claim, she has conceded the issue.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)

("Plaintiff has not attempted in her briefs to connect NSRC to any of the adverse actions taken against her, or otherwise to respond to Defendant's denial that NSRC is a proper party. ") (footnote omitted); *Hudson*, 209 F. Supp. 2d at 1324 ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citations omitted).

In sum, summary judgment on Burns's gender discrimination claim is appropriate for the alternative reason that she has produced insufficient evidence from which a reasonable jury could find pretext and/or she has abandoned the pretext issue. *See, e.g., Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir.1989) ("[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its action.") (citation omitted).

## V.   CONCLUSION

Accordingly, for the foregoing reasons, SUPERVALU's Motion for Summary Judgment is due to be granted.  The court will enter a separate order granting SUPERVALU's Motion for Summary Judgment and dismissing Burn's case with prejudice.

**DONE** and **ORDERED** this the 30th day of November, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge